RESTORATION REALTY CORP., Respondent, v OLIVIA ROBERO, Appellant.

First Department, June 8, 1982

APPEARANCES OF COUNSEL

*David Ng* of counsel (*Kent Karlsson, P. C.,* attorney), for appellant.

*Arthur L. Goldstein* for respondent.

**OPINION OF THE COURT**

MILONAS, J.

This case involves an appeal by defendant-appellant Olivia Robero from a judgment in favor of plaintiff-respon-

dent Restoration Realty Corporation. The court below held, after a nonjury trial, that the defendant had not timely exercised her option to purchase certain premises at 187½ Ninth Avenue in Manhattan and awarded possession to the plaintiff landlord.

The facts are as follows: In August of 1978, Robero entered into a five-year lease, commencing on August 15, 1978 and ending on August 15, 1983, with plaintiff's predecessors in title for the rental of an 1860 one-family clapboard house located in the Chelsea area. The building consists of a store on the main floor and a residential apartment on the second (whose tenant recently died). Pursuant to the terms of the agreement, the premises were to be used for a restaurant and the sale of allied products and for no other purpose. There was also a standard alterations clause mandating the advance written consent of the landlord to structural changes and describing the respective rights of the parties with regard to trade fixtures. The lease also contained a provision whereby the landlord was required to give the tenant written notice of any default thereunder and an opportunity to cure such alleged default.

Further, defendant was accorded an option to purchase in that: "So long as Tenant is in good standing, she shall have the Right For One (1) Year from date hereto to Purchase these premises at a gross sales price of $47,500.00". According to paragraph 41, in the event that the tenant exercised her option, the payments made to the lessor for insurance premiums would be credited to the purchaser as a closing adjustment.

The defendant then proceeded to make renovations and improvements so as to render the premises suitable for restaurant purposes. At trial, she testified that the estimated costs of the alterations were in excess of $38,000, excluding her own labor.

On May 1, 1979, Harry Langer, the president and sole stockholder of the plaintiff corporation, contracted to buy the premises for the same price and the same general terms as those embodied in Robero's option, but subordinate to defendant's option, with the additional proviso that

Langer would pay the former owners an extra $5,000 if Robero's lease were to be terminated within two years. The agreement also declared that the sale was subject to the residential occupancy of the former owner, as well as to all violations except as otherwise stated. However, there was a representation by the sellers that they had no notice of any violations other than one with respect to heating.

Subsequent to signing the contract, and through the end of July of 1979, Langer visited the property and observed the renovations which had been undertaken by defendant. By the time that Langer went on vacation in the beginning of August, only minor decorating work remained to be completed before the scheduled opening of the restaurant. Langer did not inform defendant of any alleged failure to obtain a building permit for the alterations, nor did he mention any other possible default in her performance under the lease. Nonetheless, he directed his attorney to reject any attempted exercise of the option by Robero on the ground that she was in violation of her lease and, therefore, not in good standing. Moreover, if she were to try to exercise the option after August 8, 1979, Langer's counsel was to assert both untimeliness and lack of good standing.

On August 14, 1979, defendant exercised her option to purchase. Pursuant to his instructions, Langer's lawyer advised the defendant that her option had expired on August 7, 1979. An effort was made to persuade Robero to consent in writing to a surrender of her option. Unsuccessful in this endeavor, Langer first commenced an action, which he later discontinued, for the nonpayment of rents allegedly due (while holding, but not cashing, checks for three months' rent), and, secondly, a holdover proceeding based upon various purported violations of the lease. Plaintiff then instituted a declaratory judgment action in the Supreme Court, which sought to invalidate defendant's exercise of her option rights as being untimely and also because she was not in good standing under the lease.

■ ■ The trial court found in favor of the plaintiff, holding that since the lease was executed on August 8, 1978, the option was required to be exercised within one year of that date rather than on August 15, 1978, which is

when the lease became effective and, further, that Robero was not a tenant in good standing at the time of the exercise of the option. In both instances, the court below was clearly in error.

■ On the issue of whether August 8 or August 15 is controlling, the court was not warranted in concluding that the former was the pertinent date. The only proof at trial relating to when the lease was signed came from one of the former owners, Donald Fisher, and the defendant herself. Fisher, however, admitted that he had no independent recollection of that date but was relying upon the fact that the lease was dated August 8, 1978. Robero, on the other hand, testified that she remembered that the lease was signed on August 15, 1978, the date that the lease went into effect and the day that she obtained the keys to the premises. Thus, while there is a notable absence of probative evidence that the lease was signed on August 8, 1978, as the plaintiff contends, the evidence supporting defendant's position is both strong and convincing. For example, the contract of sale to Langer expressly recognized that the option termination date in the lease was August 14, 1979. Considering the operative life of the lease (from August 15, 1978 to August 15, 1983), the May 1, 1979 contract of sale, and the testimony introduced at trial, it is plain that Robero exercised her option within the required period.

■ As to the matter of defendant's lack of good standing under the lease, plaintiff has accused Robero of failing to pay rent due on July 15 and some months thereafter, notwithstanding her history of timely payment and the fact that all rent having been remitted by January of 1980, plaintiff discontinued his nonpayment proceeding. In this respect, the evidence demonstrates that after July 16, 1979, the date on which Langer took title to the property, no demand for payment was made until at least September 10, when he returned from vacation, which was subsequent to her exercising the option. Robero stated that prior to August 14, she sent the rent check to Donald Fisher since no one had advised her of the change in ownership. According to Fisher, some time after receiving the payment, his office forwarded it to Langer. Although the check, when finally deposited, did not clear the bank, defendant points

to the hectic events surrounding the opening of her restaurant, the fact that she was in the process of changing banks and her prompt replacement of the check. Under these circumstances, equity will intervene to prevent a forfeiture resulting from the nonpayment of rent, if indeed such can be deemed to have occurred here, where the delay did not constitute a material breach of the lease and the landlord was not harmed or prejudiced thereby. (*57 E. 54 Realty Corp. v Gay Nineties Realty Corp.,* 71 Misc 2d 353; see, also, *J.N.A. Realty v Cross Bay Chelsea,* 42 NY2d 392; and *Sy Jack Realty Co. v Pergament Syosset Corp.,* 27 NY2d 449.)

Plaintiff also claims (and brought a holdover proceeding on this basis) that Robero did not cure, upon five days' notice given on November 30, 1979, certain defaults under the lease. Yet, it is undisputed that no violations were filed by any agency prior to August 14, 1979, nor did plaintiff, on or before that date, serve any notice in writing to the defendant of any violations of law or of the lease. Moreover, since Langer and his predecessors were unquestionably aware of the extensive renovations being performed on the premises, plaintiff cannot now complain about defendant's neglecting to procure a building permit for the alterations or her not receiving the advance written permission of the former landlord. The acceptance of rent throughout this period and the failure by the owners to take any action constitutes a clear waiver. In this connection, Langer is in no better position than are the original lessors, who were certainly aware that the renovations were necessary in order to render the building usable for the purposes for which it had been rented.

What appears to be involved in the instant situation is that plaintiff, interested in acquiring the property for his own benefit, has embarked on a campaign of defeating the contractual rights of a party who has acted in good faith.

Consequently, the judgment of the Supreme Court, New York County (CAHN, J.), entered May 21, 1981, which granted plaintiff's motion for a declaratory judgment that defendant-appellant had not timely exercised her right to purchase the subject property pursuant to an option in her lease and granted judgment of possession in the summary holdover proceeding transferred to and consolidated with

the declaratory judgment action, should be reversed, on the law and the facts, without costs, and judgment granted in favor of defendant-appellant declaring that she timely exercised her option to buy; the summary holdover proceeding should be dismissed and the clerk is hereby directed that the $5,000 deposited with the clerk by the appellant be released to her.

LUPIANO, J. (dissenting). I join in Justice SILVERMAN's conclusion that the judgment should be modified to the extent of affirming the declaratory judgment portion thereof and remanding the summary dispossess proceeding to the trial court. However, my affirmance of the declaratory judgment portion of the judgment appealed from is based upon the conclusion that the lease agreement relevant to the option to purchase is unambiguous. The subject lease recites that it is "made as of this 8th day of August 1978" and provides that the lease term shall "commence on the 15th day of August" 1978 and "end on the 15th day of August" 1983. Paragraph 39 thereof provides that the tenant "shall have the Right For One (1) Year *from date hereof* to Purchase these premises" (emphasis supplied). It is undisputed that the tenant endeavored to exercise the option to purchase on August 14, 1979. The date of the lease is August 8, 1978. The option was to be exercised within one year of this date. Nowhere in the lease is it provided that the option may be exercised within one year of the commencement of the lease term. No ambiguity exists. Accordingly, the tenant did not timely exercise her right to purchase the property pursuant to the option contained in the lease. "It is the general rule that in a contract of option time is of the essence" (10 NY Jur, Contracts, § 273, p 211; see *Kotcher v Edelblute,* 223 App Div 451, revd on other grounds 250 NY 178; *Noble v Higgins,* 214 App Div 135, affd 243 NY 538; Time specified in real-estate contract for giving notice of exercise of option to purchase as of essence, Ann., 72 ALR2d 1127).

SILVERMAN, J. (dissenting). I would modify the judgment appealed from to the extent of affirming the declaratory judgment portion thereof, and remand the summary dispossess proceeding thereof to the trial court to make findings of fact.

1. *The option to purchase.*

The option agreement provided that: "So long as Tenant is in good standing, she shall have the Right For One (1) Year from date hereof to Purchase these premises".

At the time the tenant attempted to exercise the option, she was not a tenant in good standing as she was in default in payment of the current rent. The current period was July 15 to August 14, 1979; the rent was apparently due on August 1, 1979. The option was attempted to be exercised on August 14. The tenant said that she had mailed the check by August 14. Plaintiff landlord claims that it did not receive the rent check until August 30, 1979. In any event, the check was returned for insufficient funds. A bad check is not a payment at all. As payment of rent is obviously a very important — perhaps the most important — obligation of the tenant, I think a tenant who is in arrears in the payment of current rent cannot be deemed a tenant in good standing. In light of this, it is unnecessary to consider whether the trial court was right or wrong in its other grounds, both of law and fact, for declaring the attempted exercise of the option to be ineffective.

2. *The summary dispossess proceedings.*

The trial court wrote an extensive decision, which, however, appears to have been directed entirely to the declaratory judgment phase of the action, relating to the effectiveness or ineffectiveness of the attempted exercise of the option to purchase. The decision ends with a paragraph saying: "With respect to the holdover summary proceeding consolidated herewith, the Court will confer with the parties and their attorneys."

The attorneys for the tenant declined the invitation to confer with the court. The judgment grants final judgment of possession to the landlord "by reason of the expiration of the term of the respondent's lease and the respondent's continuing in possession of the premises without the permission of petitioner after the expiration of said term". I do not see any findings of fact on this point. As the term specified in the lease had clearly not yet expired, so that the Trial Justice must have held that the lease had been terminated before its specified expiration date, this phase

of the case should be remanded to the trial court to make findings.

CARRO, J. P., and FEIN, J. concur with MILONAS, J.; LUPIANO and SILVERMAN, JJ., dissent in separate opinions.

Judgment, Supreme Court, New York County, entered on May 21, 1981, reversed, on the law and the facts, without costs and without disbursements, and judgment granted in favor of defendant-appellant declaring that she timely exercised her option to buy; the summary holdover proceeding is dismissed and release of deposit made by appellant directed.